UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NISSAN NORTH AMERICA, INC., individually, and SOMPO AMERICA INSURANCE COMPANY as subrogee of Nissan North America, Inc., </br></br>Plaintiffs,</br></br>v.</br></br>BAKER ROOFING COMPANY, et al.,</br></br>Defendants. | )</br>)</br>)</br>)</br>)</br>)</br>)</br>)  No. 3:22-cv-00281</br>)</br>)</br>)</br>)</br>) |

## MEMORANDUM OPINION

Nissan North America, Inc. ("Nissan") brought this action against Baker Roofing Company ("Baker") and its subcontractors, J&M Quality Roofing, LCC, Republic Services National Accounts, LLC, and Clean Harbors Environmental Services, Inc. ("Subcontractors") for breach of contract and negligence, alleging that Baker breached the contract and negligently failed to complete the project "in a good and workmanlike manner." (Doc. No. 1-1 ¶¶ 29, 34). The parties contracted in August 2018 for Baker and the Subcontractors to repair Nissan's roof at its Smyrna, Tennessee facility. (Doc. No. 28-2). In March 2019, Baker and the Subcontractors allegedly placed a stockpile of nearly 60,000 pounds of gravel and other materials on Nissan's roof. (Doc. No. 42 at 6). The roof collapsed that same day. Relying solely on the pleadings, Baker and Republic seek dismissal under Fed. R. Civ. P. 12(b)(6), (Doc. Nos. 28 and 68), which Nissan opposes, (Doc. Nos. 42 and 70), and J&M and Clean Harbors likewise seek dismissal through a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Doc. Nos. 38 and 67), which

1

Nissan also opposes. (Doc. Nos. 44 and 69). For the reasons discussed herein, Defendants' Motions (Doc. Nos. 28, 38, 67, 68) will be denied.

## I. BACKGROUND

Nissan contracted with Baker to perform the FY18 Re-Roof Project – Trim & Stamping Plants (the "Project"). (Doc. No. 1-1 ¶ 5). The parties entered a contract, (Doc. No. 28-2 at 2), which the Court will refer to as the "Agreement" that incorporated Nissan's [Nissan] Facilities & Construction, Machinery & Equipment and MRO General Terms & Conditions. (Id.).[1] The Agreement contains a host of provisions, pertaining to topics including indemnification, liability for injury, and insurance. (Id.).

The dispute arises from the language found in Section 23 of the Agreement. (Doc. No. 28-2 at 13). Section 23, in pertinent part, begins:

> 23. Insurance.
> 23.1 Contractor [Baker] agrees to carry full insurance coverage for all activities reasonably connected with this Agreement, in the types and at the minimum amounts listed below. (Id. at 12).

In a later provision within the same section, it states:

> 23.4 Each insurance policy required hereunder shall waive any right of subrogation, set off or counter claim, whether by attachment or otherwise of the insurers thereunder against Nissan, the loss payees, or any other insured person, as the case may be, in respect of any liability of any such person insured under such policy. (Id. at 13).

The focal point of the pending motions is the waiver of subrogation:

> 23.5 Nissan and Contractor [Baker] hereby waive all rights against each other and against subcontractors and suppliers to whatever tier of each other, for loss or damage with respect to the goods and/or services provided hereunder and to any other work at the Project *to the extent covered by the property insurance maintained*

---

[1] The Agreement is supplemented with Purchase Order No. 7400119563, including Baker's BAFO Bid Sheet and Nissan's Handbook REV 14, among other criteria not necessary for the Court's analysis here.

by Nissan *as noted above* except to the extent covered by professional liability insurance. (Id.).

Then, the parties agreed that:

> 23.7 Nothing herein shall limit or prohibit Nissan from obtaining insurance for its own account and any proceeds payable thereunder shall be payable as provided in the underlying policy. (Id.).

The issue before the Court is whether Section 23.5 expressly bars Nissan from alleging breach of contract against Baker and its Subcontractors. Baker argues dismissal is required because the provision forecloses any claims by Nissan because "Nissan waived 'all rights' against Baker…for loss or damage…at the Project." (Doc. No. 28 at 6). Conversely, Nissan contends that the waiver is limited only to "the property insurance maintained by Nissan as noted above." (Doc. No. 42 at 10). Nissan's property insurance is not noted above. (Doc. No. 28-2 at 13). Nor did Nissan maintain insurance during this time. (Id.)

## II.  LEGAL STANDARD

The Court will decide all four motions under Federal Rules of Civil Procedure 12(b)(6) and 12(c), applying the same standard. EEOC v. J.H. Routh Packing Co., 246 F.3d 850, 861 (6th Cir. 2001). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For a motion to dismiss, the Court shall "construe the complaint in the light most favorable to the plaintiff," and determine whether "the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Engler v. Arnold, 862 F.3d 571, 575 (6th Cir. 2017) (quoting Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). Accordingly, the complaint must "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." Eidson v.

3

Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007) (citing Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005)).

In analyzing the sufficiency and plausibility of the claim, the Court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The Court will not accept a legal conclusion masked as a factual allegation, nor an "unwarranted factual inference," as true. Id. at 476.

### III. ANALYSIS

Nissan and Baker have different interpretations regarding Section 23.5, but they agree that Tennessee law controls.

#### A. Tennessee Contract Law

"A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." Allmand v. Pavletic, 292 S.W.3d 618, 630 (Tenn. 2019). This is determined by the plain meaning of the words in the contract. Id. at 630. When the language is plain and unambiguous, the Court may interpret and enforce the four corners of the contract as written, see Union Realty Co. v. Family Dollar Stores of Tennessee, Inc., 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007), which can be done on a motion to dismiss as a matter law. "However, if the words are ambiguous, i.e., susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language." Id. When reasonable minds differ, resolution on a motion to dismiss is inappropriate. McKee Foods Corp. v. Pitney Bowes, Inc., No. 1:06-CV-80, 2007 WL 896153, at *3 (E.D. Tenn. Mar. 22, 2007) ("Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes.

4

In such a situation, contractual interpretation is a matter of law and may be addressed on a motion under Rule 12. When a contract's terms are ambiguous, however, interpretation is a question of fact and is not appropriately decided in the context of Rule 12.")). Even so, ambiguity does not magically arise merely because the parties read contractual provisions differently. Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn. 2001).

B. Discussion of Section 23.5 of the Agreement

The Court must determine if Section 23.5 is of "uncertain meaning and may fairly be understood in more ways than one." Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975). For Baker and the Subcontractors to prevail at this early stage of litigation, Section 23.5 must be clear and unambiguous. Id. at 805. It is not.

When viewed in the light most favorable to Nissan, Section 23.5 has at least two reasonable interpretations. Nissan and Defendants have set forth two opposing interpretations that closely align with incompatible canons of interpretation: "nearest reasonable referent" and "series" canons. A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012).

Defendants offer that "Nissan agreed to waive 'all rights' against Baker for losses or damage (1) with respect to services provided under the Contract and (2) to any other work at the Project to the extent covered by the property insurance maintained by Nissan." (Doc. No. 28 at 9). Though Defendants do not state so explicitly, this interpretation applies the "nearest reasonable referent" canon, which would limit the application of the qualifying language— "to the extent"—to the phrase immediately preceding the phrase "any other work". According to Defendants, the "and" creates two separate clauses, and, thus, Nissan should be barred from

seeking relief for goods and services by Baker and the Subcontractors under the Agreement because of the waiver of "all rights". (Doc. No. 42).

Nissan has provided another reasonable interpretation of Section 23.5.   (Doc. No. 42).[2] Reference to the italicized language in the provision illustrates the point:

> Nissan and Contractor [Baker] hereby waive all rights against each other and against subcontractors and suppliers to whatever tier of each other, for loss or damage with respect to the goods and/or services provided hereunder [**and**] to any other work at the Project *to the extent covered by the property insurance maintained* by Nissan *as noted above* except to the extent covered by professional liability insurance. (Id. at 13) (emphasis added).

Nissan reads the words "to the extent" to apply to both the "goods and/or services provided" clause and to the "any other work" clause.   Nissan's interpretation follows the so-called "series Canon" that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series" a "prepositive or postpositive modifier normally applies to the entire series." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012). The conjunction "and" brings both clauses under the same qualifier, i.e., "to the extent" applies to both clauses. Therefore, as Nissan explains, it waived all rights for both Baker's goods and/or services and any other work **to the extent** Nissan maintained property insurance noted above Section 23.5 in the Agreement.   See also Paroline v. United States 572 U.S. 434 (2014) (quoting Porto Rico Railway, Light & Power Co. v. Mor 253 U.S. 345, 348 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.").

---

[2] Baker also alleges that the remedy "Nissan seeks in this suit are, at least in part, 'covered by the property insurance maintained by Nissan'[.]" (Doc. No. 28 at 11).   Nissan has provided that "[s]ince the filing of the Complaint, Sompo has made payments to Nissan totaling $5,811,855.00 and has reached an agreement to make an additional payment of $7,692,366.56, for a total payment of $13,504,221.56 after applying Nissan's $50,000.00 deductible."   (Doc. No. 66 at 2–3).

The Court notes that the words "as noted above" create another layer of uncertainty that cannot be resolved on a motion to dismiss. Nowhere in Section 23 does it mention any requirement for Nissan to maintain insurance. Although Defendants reference prior versions of the Agreement that included specific requirements for Nissan's own property insurance, (Doc. No. 68 at 14) the Defendants' argument is well beyond the perimeters of the pending motions; for now, only the words in the Agreement control. Viewing the Complaint's factual allegations in the light most favorable to Nissan, because the property insurance maintained by Nissan is **not** noted above, the qualifier "to the extent" may be fruitless altogether.

The parties' dispute over the meaning of Section 23.5 necessarily turns on whether "to the extent" applies to the entire sentence or to the nearest reasonable antecedent, i.e., "any other work". Because this qualifying language necessarily follows two logical, reasonable interpretations, 23.5 is ambiguous and cannot be decided under Rule 12 motions. Therefore, the pending motions will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE